**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**DAVID BRENNAN**                                                                                  **PLAINTIFF**

**v.**                                       **Case No. 4:20-cv-00505-KGB**

**UNITED STATES OF AMERICA,**
**JOVITA CARRANZA, in her**
**official capacity as Administrator**
**of the U.S. Small Business Administration,**
**and STEVEN MNUCHIN, in his official capacity**
**as U.S. Secretary of the Treasury**                                          **DEFENDANTS**

<u>**ORDER**</u>

Before the Court is plaintiff David Brennan's emergency motion for *ex parte* temporary restraining order and preliminary and permanent injunction (Dkt. No. 2). The Court denied previously Mr. Brennan's motion to the extent that he requested an *ex parte* ruling without notice pursuant to Federal Rule of Civil Procedure 65(b)(1) and held under advisement Mr. Brennan's request for a temporary restraining order and preliminary and permanent injunction (Dkt. No. 4). Defendants United States of America, Jovita Carranza, and Steve Mnuchin responded in opposition to Mr. Brennan's motion (Dkt. No. 9), and Mr. Brennan replied (Dkt. No. 10). For the following reasons, the Court denies Mr. Brennan's motion to the extent that he requests a temporary restraining order and preliminary injunction. At this time, the Court declines to enter a final judgment on the merits.

**I.      Background**

Millions of American workers and businesses have been affected by the COVID-19 global pandemic. Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to help individuals, families, businesses, and health-care providers cope with the economic

and public health crises triggered by COVID-19.  *See* 15 U.S.C. §§ 9001–9080.  Among other

things, the CARES Act allows a business to seek an advance when applying to the Small Business

Administration ("SBA") for an Economic Injury Disaster Loan ("EIDL") in response to COVID-

19.  Congress authorized 20 billion dollars to be appropriated to the SBA for it to provide

emergency grants under this feature of the CARES Act.  *See* 15 U.S.C. § 9009(e)(7).  The relevant

portion of the CARES Act provides:

> (e)    Emergency grant
>
> (1) In general
> During the covered period, an entity included for eligibility in subsection (b),
> including small business concerns, private nonprofit organizations, and small
> agricultural cooperatives, that applies for a loan under section 636(b)(2) of this title
> in response to COVID-19 may request that the Administrator provide an advance
> that is, subject to paragraph (3), in the amount requested by such applicant to such
> applicant within 3 days after the Administrator receives an application from such
> applicant.
>
> (2) Verification
> Before disbursing amounts under this subsection, the Administrator shall verify that
> the applicant is an eligible entity by accepting a self-certification from the applicant
> under penalty of perjury pursuant to section 1746 of Title 28.
>
> (3) Amount
> The amount of an advance provided under this subsection shall be not more than
> $10,000.
>
> (4) Use of funds
> An advance provided under this subsection may be used to address any allowable
> purpose for a loan made under section 636(b)(2) of this title [15 U.S.C. §
> 636(b)(2)], including—
>
>> (A) providing paid sick leave to employees unable to work due to the direct
>> effect of the COVID-19;
>>
>> (B) maintaining payroll to retain employees during business disruptions or
>> substantial slowdowns;
>>
>> (C) meeting increased costs to obtain materials unavailable from the applicant's
>> original source due to interrupted supply chains;

(D) making rent or mortgage payments; and

(E) repaying obligations that cannot be met due to revenue losses.

(5) Repayment
An applicant shall not be required to repay any amounts of an advance provided under this subsection, even if subsequently denied a loan under section 636(b)(2) of this title.

(6) Unemployment grant
If an applicant that receives an advance under this subsection transfers into, or is approved for, the loan program under section 636(a) of this title, the advance amount shall be reduced from the loan forgiveness amount for a loan for payroll costs made under such section 636(a) of this title.

(7) Authorization of appropriations
There is authorized to be appropriated to the Administration $20,000,000,000 to carry out this subsection.

(8) Termination
The authority to carry out grants under this subsection shall terminate on December 31, 2020.

15 U.S.C.A. § 9009(e). The CARES Act was signed into law on March 27, 2020, and required that the Administrator of the SBA, Jovita Carranza ("Administrator"), "[n]ot later than 15 days after March 27, 2020, . . . issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of Title 5." 15 U.S.C. § 9012 (footnotes omitted).

On April 7, 2020, the SBA announced that EIDL advance grants would be limited to $1,000.00 per employee, up to $10,000.00 (Dkt. No. 9-1, at 6). Once the SBA verifies an entity's eligibility and approves the applicant's advance grant, the information is transmitted to the United States Department of the Treasury ("Treasury"), which disburses the advance grant to the entity (*Id.*, at 2).

Mr. Brennan is a sole proprietor and is primarily engaged in a political podcast and the sale of political-themed T-shirts and novelty items (Dkt. No. 1, ¶ 1). Mr. Brennan represents that he

accessed the SBA website on March 31, 2020, and completed the streamlined application for an EIDL and Emergency EIDL Grant (*Id.*, ¶ 14).  According to Mr. Brennan, at the time he submitted his application, it was the policy of the Administrator to advance the full $10,000.00 to every applicant who requested an advance in that amount (*Id.*).  Mr. Brennan represents that, despite checking the box to request the advance, he did not receive the $10,000.00 advance within three days (*Id.*).  He represents that it was 21 days before he received any advance at all and that, when he did receive an advance, it was only in the amount of $1,000.00 (*Id.*, ¶¶ 14, 18).  Mr. Brennan thus sues defendants and seeks immediate disbursal of the remaining $9,000.00 that he requested (*Id.*, ¶ 21).  Mr. Brennan claims that, without immediate disbursal of the remaining $9,000.00 that he requested, he will suffer irreparable harm, including the permanent loss of his technological equipment, furnishings, and fixtures with the inability to re-lease due to the damage to and loss of his business reputation and goodwill with lease-creditors in the local lease creditor community (*Id.*).  He claims that he will suffer the permanent loss of his podcast and T-shirt business and the inability to exercise his right to freedom of political speech through his podcast and T-shirt sales (*Id.*).

## II.      Consolidation With Trial On The Merits

At this time, the Court declines to consolidate its consideration of this motion with a trial on the merits under Federal Rule of Civil Procedure 65(a).  Mr. Brennan first requested consolidation in his reply to defendants' response to Mr. Brennan's motion for temporary restraining order and preliminary injunction.  Specifically, Mr. Brennan asserts that, because the Court denied his request for an *ex parte* temporary restraining order, "it seems elementary that the issue of the [temporary restraining order] is decided in the negative, and it is therefore appropriate to view the motion now solely as one for a preliminary and permanent injunction pursuant to

Federal Rule of Civil Procedure 65(a)." (Dkt. No. 10, at 5).   Mr. Brennan contends that consolidation of the instant motion and a trial on the merits is appropriate (*Id.*).   He asserts that the relief sought in the complaint is identical to the relief sought in the motion and that his claims for relief will therefore be determined according to the same material facts, law, and legal theory (*Id.*).

Because Mr. Brennan first made this consolidation request in his reply, defendants were not provided with the opportunity to prepare arguments for the Court to consider in a trial on the merits when filing defendants' response.   Instead, defendants responded to Mr. Brennan's request for temporary restraining order and preliminary injunctive relief only.   The parties agreed to submit this matter to the Court on the briefs, without a hearing.   Consequently, the Court declines at this time to consolidate the instant motion with a trial on the merits.   Instead, the Court in this Order considers and rules on only Mr. Brennan's motion for temporary restraining order and preliminary injunctive relief.

### III.   Analysis Of Request For Relief

The Court begins with the threshold question of whether it has subject matter jurisdiction over Mr. Brennan's claim and specifically his request for injunctive relief.   Mr. Brennan contends that the Court has subject matter jurisdiction over his claims, but defendants argue the Court lacks subject matter jurisdiction.   Defendants have mounted a factual attack on the Court's jurisdiction, so Mr. Brennan does not enjoy the benefit of the allegations in his pleading being accepted as true by this Court.   *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015).

Having considered this matter, the Court determines that, at least at this stage of the proceedings, Mr. Brennan seeks the issuance of an injunction against the Administrator to compel a specific result in a discretionary area which 15 U.S.C. § 634(b)(1) of the Small Business Act prohibits.   *See Peoples Brewing Co. v. Kleppe*, 360 F. Supp. 729, 730 (E.D. Wis. 1973).   As a

result, the Court concludes that it lacks subject matter jurisdiction over Mr. Brennan's request for a temporary restraining order and preliminary injunction brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, at least to the extent that Mr. Brennan seeks to compel agency action he claims has been unlawfully withheld.

## A.     The Administrative Procedures Act

The federal government and its agencies generally are immune from suit in the absence of a waiver. *See Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260 (1999). Mr. Brennan contends that this Court has subject matter jurisdiction pursuant to § 702 of the APA, which provides that, in general, a person wronged, aggrieved, or adversely affected by agency action may obtain judicial review in federal court and secure a judgment against the United States (Dkt. No. 10, at 8). *See* 5 U.S.C. § 702. The Court rejects the argument that the APA provides a basis for jurisdiction. It is well-established that the APA itself does not provide subject matter jurisdiction; rather, it provides a cause of action for a plaintiff who has properly asserted a federal question under 28 U.S.C. § 1331. *See Califano v. Sanders*, 430 U.S. 99, 107 (1997) ("We . . . conclude that the APA does not afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action.").

Further, even if there is a properly asserted federal question, the APA establishes a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (quoting 5 U.S.C. § 702). That presumption can be rebutted by a showing that the relevant statute "preclude[s]" review, 5 U.S.C. § 701(a)(1), or that the "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). The Court acknowledges that the Supreme Court has determined "[t]o 'honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly,' confining it to those rare 'administrative

decision[s] traditionally left to agency discretion.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (second alteration in original) (citations and internal quotation marks omitted).

Here, the Court examines the federal question presented by Mr. Brennan and whether that question is reviewable under the APA.

## B.    The Small Business Act

All parties agree that the federal question underlying Mr. Brennan's APA claims arises under the Small Business Act, 15 U.S.C. § 631 *et seq.* Defendants cite § 634(b)(1) of the Small Business Act and maintain that this provision bars this Court from hearing this case because the United States has not waived sovereign immunity for suits seeking injunctive relief against the SBA and that injunctive relief against that agency is barred by 15 U.S.C. § 634(b)(1) (Dkt. No. 9, at 9). That section provides, as relevant here:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property

15 U.S.C. § 634(b)(1). Some courts, observing that § 634(b)(1)'s language precluding injunctive relief against the Administrator is qualified by the introductory clause of § 634(b), "[i]n the performance of, and with respect to the functions, powers and duties vested in [her] by this chapter . . . ," have suggested that, when the Administrator acts beyond the scope of her authority, § 634(b)(1) does not preclude injunctive action. *See Ricks v. United States*, 434 F. Supp. 1262, 1272 (S.D. Ga. 1976) (collecting cases).

The Eighth Circuit has yet to consider the issue of whether § 634(b)(1) provides the SBA with blanket immunity against suits seeking injunctive relief.  Defendants direct the Court to decisions rendered by the United States Courts of Appeals for the Fourth and Fifth Circuits, which have both interpreted § 634(b)(1) to preclude all injunctive relief against the SBA.  *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 (5th Cir. 1994); *Driskill, Inc. v. Abnor*, 901 F.2d 383, 386 (4th Cir. 1990).  Mr. Brennan asserts that the Eighth Circuit has granted previously declaratory relief where it had the same effect as an injunction.  *See State of Iowa ex rel. Miller v. Block*, 771 F.2d 347 (8th Cir. 1985).  *Block*, however, involved a suit seeking injunctive relief against the Secretary of the United States Department of Agriculture to implement three federal agricultural disaster relief programs; the *Block* court did not consider the availability of injunctive relief against the SBA's administrator.  Mr. Brennan argues that the Fourth and Fifth Circuit cases should not control here (Dkt. No. 10, at 9–10).

To resolve the parties' dispute, the Court need not resolve this precise issue.  For the following reasons, even if § 634(b) does not provide the SBA with blanket immunity against suits seeking injunctive relief, the Court determines that Mr. Brennan seeks the issuance of an injunction against the Administrator to compel a specific result in a discretionary area which § 634(b)(1) prohibits and which under the APA is non-reviewable.  As a result, the Court determines that Mr. Brennan is not likely to succeed on the merits of his claim at least with respect to his request for injunctive relief and therefore is not entitled to a temporary restraining order or preliminary injunction at this stage of the litigation.

### C.    *Ulstein Maritime* As A Potential Exception

In further support of his argument that this Court has jurisdiction over his claim, Mr. Brennan relies on the United States Court of Appeals for the First Circuit's decision in *Ulstein*

*Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987), to argue that, regardless of the effect of § 634(b)(1), there are recognized exceptions permitting the award of injunctive relief. According to Mr. Brennan, he alleges that the SBA exceeded its authority and maintains that the injunction he seeks would not interfere with internal SBA operations or attach SBA funds, which satisfies the standard established by the First Circuit in *Ulstein Maritime* for the Court to have jurisdiction over this matter (Dkt. No. 10, at 9).

Defendants also direct the Court to *Ulstein Maritime*, arguing that the First Circuit concluded that § 634(b)(1) "does not provide blanket immunity from every type of injunction," but allows only a narrow review of "agency actions that exceed agency authority where the remedies would not interfere with internal agency operations" through "judicial orders attaching agency funds." 833 F.2d at 1056–57. Defendants suggest that, even if this Court adopts the reasoning in *Ulstein Maritime*, Mr. Brennan's claim does not fall within this narrow category because, according to defendants, Mr. Brennan does not allege that the SBA exceeded its authority, and he requests specifically an injunction that interferes with internal agency operations through a judicial order attaching agency funds (Dkt. No. 9, at 10).

This Court is skeptical that *Ulstein Maritime* provides any exception to § 643(b). In *Ulstein Maritime*, plaintiffs were seeking reversal of a particular agency determination of their own rights following an administrative adjudication. Plaintiffs requested a declaration under the APA that a "certificate of competency" issued by the SBA to one of plaintiffs' competitors for a naval procedural contract was invalid. The district court set aside the SBA certification and remanded the matter to the Department of the Navy for further consideration. The First Circuit affirmed and reasoned that a declaratory judgment invalidating an SBA certificate of competency was not the equivalent of injunctive relief against the SBA. Also, the court stated in dicta that, even if a

declaratory judgment were to be considered injunctive relief, the district court had jurisdiction to enter an injunction by virtue of 28 U.S.C. § 1491(a)(3).  In reaching this latter conclusion, the First Circuit relied heavily on *Cavalier Clothes v. United States*, 810 F.2d 1108, 112 (Fed. Cir. 1987), and *Related Industries, Inc. v. United States*, 2 Cl. Ct. 517, 522 (1983), which, in turn, relied on § 1491(a)(3).  Critically, § 1491(a)(3) authorized the United States Court of Federal Claims to issue injunctive relief against the SBA but has since been repealed.  *See Turner v. U.S. Small Bus. Admin.*, No. 4:00-CV-833 CAS, 2001 WL 1346016, at *3 (E.D. Mo. Sept. 10, 2001).

Moreover, although the Eighth Circuit has not addressed this issue, *Ulstein Maritime*, to the extent it purports to authorize federal district courts to award injunctive relief against the SBA, is against the clear weight of authority.  *See*, *e.g.*, *Enplanar*, 11 F.3d at 1290; *Abdnor*, 901 F.2d at 386; *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975); *Valley Forge Flag Co. v. Kleppe*, 506 F.2d 243, 244 (D.C. Cir. 1974) (per curiam); *Palmer v. Weaver*, 512 F. Supp. 281, 285 (E.D. Pa. 1981); *Turner*, 2001 WL 1346016, at *3; *Little v. United States*, 489 F. Supp. 1012, 1016 (C.D. Ill. 1980), *aff'd*, 645 F.2d 77 (7th Cir. 1981), *Murray v. Kleppe*, 424 F. Supp. 108, 109 (M.D. Pa. 1977); *Jets Servs., Inc. v. Hoffman*, 420 F. Supp. 1300, 1308 (M.D. Fla. 1976); *Analytical Sys. Corp. v. Small Bus. Admin.*, 346 F. Supp. 1149, 1150 (D. Mass. 1972).

The Eastern District of Missouri's decision in *Turner* is instructive.  In that case, plaintiffs sought to restrain the SBA from foreclosing on certain real property located in St. Louis County, Missouri.  Rejecting the reasoning of *Ulstein Maritime*, the district court "agree[d] with the weight of authority and h[eld] that the plain language of § 634(b)(1) precludes the issuance of injunctive relief against the SBA." *Turner*, 2001 WL 1346016, at *3.  Noting that plaintiffs' complaint sought only injunctive relief, the district court dismissed it for failure to state a claim.

Further, plaintiffs in *Ulstein Maritime* sought reversal of a particular agency determination of their own rights following an administrative adjudication, and the case has been read to permit only a narrow review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations through judicial orders attaching agency funds. *See* 833 F.2d at 1056–57.  Mr. Brennan claims that the relief he seeks would not interfere with internal agency operations essentially because the Administrator's actions have exceeded agency authority and that the relief he seeks would not attach agency funds because he is requesting money from a source that the government has already allocated as grant money.  The funds he seeks are distributed by the Treasury, not the SBA.  Here, at least at this stage, Mr. Brennan appears to seek to invalidate the manner in which the SBA is calculating total disbursement amounts under the EIDL Advance Program, to prevent the SBA from disbursing any additional funds under this program, and to award the first two million applicants $10,000.00 each.  Even Mr. Brennan's more focused request for injunctive relief requiring the Administrator to award him an additional $9,000.00 based on his Emergency EIDL Grant application seems likely to impact internal agency operations, regardless of the original source of those funds.  *Cf. Mar*, 520 F.2d at 869 ("The likelihood is that the statute excepts the injunction because of the threat of impeding or interfering with the administrative process.").  The Court is reluctant at this stage and on the record before it to conclude that Mr. Brennan's requested injunctive relief would *not* affect how the SBA administers the EIDL Advance Program, potentially affecting millions of small business across the United States, and that it does *not* attach agency funds.

For all of these reasons, this Court is reluctant to determine on the record before it and at this stage of the proceedings that Mr. Brennan is likely to demonstrate that *Ulstein Maritime* provides any basis for this Court's subject matter jurisdiction over Mr. Brennan's claim.

11

### D.      Agency Authority And Discretionary Function

Whether Mr. Brennan seeks to have this Court compel the Administrator to reach a specific result in a discretionary area impacts this Court's authority to review under the APA and potentially under § 634(b) the SBA's policy rationing the amount of money an applicant receives as an advance under the CARES Act.

Mr. Brennan argues that he seeks to prevent the Administrator from acting beyond the scope of the authority delegated to her, that is, to restrain her from misinterpreting the CARES Act, and that, under the APA, this Court has authority to correct an agency's unlawful action.  Mr. Brennan contends that the SBA's decision to ration advance grants is reviewable under the APA because the CARES Act does not provide the Administrator with discretion to determine an applicant's Emergency EIDL Grant amount, but rather the CARES Act commits it to the discretion of the applicant (Dkt. No. 10, at 13).  He asserts that it was Congress' intent for small businesses to be able to obtain the full $10,000.00 advance grant regardless of employee count (*Id.*, at 18). Mr. Brennan directs the Court to two letters penned by certain members of Congress to the Administrator of the SBA in support of this assertion (Dkt. No. 10, at 33–44).

Defendants assert that the SBA has unreviewable discretion to decide the amount of EIDL advance that an applicant receives pursuant to § 701(a)(2) of the APA, which excludes from judicial review "agency action [that] is committed to agency discretion by law."  (Dk. No. 9, at 10).  Defendants maintain that Mr. Brennan was awarded a $1,000.00 grant under the EIDL Advance Program; that the Administrator was acting pursuant to authority vested in her by the Small Business Act, specifically 15 U.S.C. § 9009's authorization of Emergency EIDL Grants, when making this award; and that, because the Administrator's actions were conducted within the scope of her authority, Mr. Brennan is barred from seeking an injunction against her.  *Cf. Valley*

*Forge Flag Company*, 506 F.2d at 244 ("The SBA Administrator's actions in soliciting bids among all small businesses and in cancelling the solicitation were conducted within the scope of his authority.  Plaintiff is thus barred from seeking an injunction against the Administrator." (citing 15 U.S.C. § 634(b)(1))).

Defendants contend that the CARES Act must be read in conjunction with 15 U.S.C. § 636(b)(2), which grants the SBA with broad discretion in granting EIDL loans (Dkt. No. 9, at 10).[1]

---

[1]  This provision states:
(b) Disaster loans; authorization, scope, terms and conditions, etc.
Except as to agricultural enterprises as defined in section 647(b)(1) of this title, the Administration also is empowered to the extent and in such amounts as provided in advance in appropriation Acts—
. . .

(2)  to make such loans (either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred (guaranteed) basis) as the Administration may determine to be necessary or appropriate to any small business concern, private nonprofit organization, or small agricultural cooperative located in an area affected by a disaster, (including drought), with respect to both farm-related and nonfarm-related small business concerns, if the Administration determines that the concern, the organization, or the cooperative has suffered a substantial economic injury as a result of such disaster and if such disaster constitutes—
(A) a major disaster, as determined by the President under the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5121 et seq.);
(B) a natural disaster, as determined by the Secretary of Agriculture pursuant to section 1961 of Title 7, in which case, assistance under this paragraph may be provided to farm-related and nonfarm-related small business concerns, subject to the other applicable requirements of this paragraph;
(C) a disaster, as determined by the Administrator of the Small Business Administration;
(D) an emergency involving Federal primary responsibility determined to exist by the President under the section 5191(b) of Title 42; or
(E) if no disaster or emergency declaration has been issued pursuant to subparagraph (A), (B), (C), or (D), the Governor of a State in which a disaster or emergency has occurred may certify to the Small Business Administration that small business concerns, private nonprofit organizations, or small agricultural cooperatives (1) have suffered economic injury as a result of such disaster or emergency, and (2) are in need of financial assistance which is not available on reasonable terms in the disaster- or emergency-stricken area. Not later than 30 days after the date of receipt of such certification by a Governor of a State, the Administration shall respond in writing to that Governor on its determination and the reasons therefore, and may

13

They argue that, while the CARES Act creates a new form of assistance, it does not abrogate the SBA's long-standing discretion in administering its programs, and defendants argue that the challenged decisions are committed to SBA's discretion and unreviewable by this Court under the APA (*Id.*, at 12).   Here, the Court examines whether the action challenged by Mr. Brennan is agency action committed to agency discretion by law.

The United States District Court for the District of Nevada considered recently whether the SBA has discretion to ration Emergency EIDL Grants under the CARES Act.   *See LIT Ventures v. Carranza*, No. 220CV00706JADJA, 2020 WL 2200845, at *2 (D. Nev. May 5, 2020).   The district court in *LIT Ventures* confronted a claim similar to Mr. Brennan's claim and determined that the CARES Act does not prescribe a mandatory, ministerial duty on the part of the SBA to fund an EIDL applicant's request for an Emergency EIDL Grant in any amount requested up to $10,000.00.   As the court explained in *LIT Ventures,* statutory interpretation begins with the text, and "[w]here the statute's language is plain, [courts] do not consider the 'legislative history or any other extrinsic material.'" *Id.* (quoting *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015)).

The first paragraph of § 9009(e) of the CARES Act provides that:

> then make such loans as would have been available under this paragraph if a disaster or emergency declaration had been issued.
> *Provided,* That no loan or guarantee shall be extended pursuant to this paragraph (2) unless the Administration finds that the applicant is not able to obtain credit elsewhere: *Provided further*, That for purposes of subparagraph (D), the Administrator shall deem that such an emergency affects each State or subdivision thereof (including counties), and that each State or subdivision has sufficient economic damage to small business concerns to qualify for assistance under this paragraph and the Administrator shall accept applications for such assistance immediately.

15 U.S.C.A. § 636(b)(2).

> [d]uring the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 636(b)(2) of this title in response to COVID-19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.

15 U.S.C.A. § 9009(e)(1). The third paragraph instructs that "[t]he amount of an advance provided under this subsection shall not be more than $10,000.00." 15 U.S.C.A. § 9009(e)(3).

Based on the language of the CARES Act, the Court cannot conclude that this language prescribes a mandatory, ministerial duty on the part of the SBA to fund an EIDL applicant's request for an Emergency EIDL Grant in any amount requested up to $10,000.00. The first paragraph is not directed at the SBA, but this language instead instructs an applicant what the applicant may do when applying for an EIDL in response to COVID-19, which is to ask the SBA to provide an advance that is subject to the $10,000.00 limit within three days of receiving the EIDL application. This Court concurs in the determination reached by the district court in *LIT Ventures*.

The *LIT Ventures* court wrote:

> The CARES Act is an extension of powers that Congress has already granted to the SBA and its Administrator—most particularly for the emergency grant, the power to make and administer EIDLs. In that regard, Congress empowered the SBA "to make such loans . . . as the Administration may determine to be necessary or appropriate to any small business concern . . . located in an area affected by a disaster . . . if the Administration determines that the concern . . . has suffered a substantial economic injury as a result of such disaster . . . .

2020 WL 220845, at *3.

As the court determined in *LIT Ventures*, "may" is a permissive word, and courts construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense. *Id.*, at *7–8. "Although 'may' could be read as permissive . . . the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive

or discretionary authority." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198–99 (2000) (examining §§ 9–11 of the Federal Arbitration Act, 9 U.S.C. §§ 9–11) (citing *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion[, but] [t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute" (footnote and citations omitted))); *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 38 (1977). There is not a clear indication from the language of this statute that the word "may" is used in a mandatory sense.

The Court acknowledges that Mr. Brennan has not challenged the SBA's discretionary authority to administer the EIDL *Loan* Program, which language the *LIT Ventures* court examined and relied upon in part to reach its conclusion. Rather, Mr. Brennan's complaint lies with the manner in which the SBA has administered the EIDL *Advance* Program. The parties dispute whether these should be considered separate and discrete programs. The Court acknowledges that the EIDL Advance Program was created for the specific purpose of providing immediate economic relief to small businesses that are currently experiencing a temporary loss of revenue. Further, the Court acknowledges that three of the five enumerated uses for emergency advance funds are wholly unrelated to the recipient's number of employees, *see* 15 U.S.C. § 9009(e)(4)(C)–(E); that the CARES Act explicitly includes zero-employee proprietorships within the definition of a covered entity for purposes of Emergency EIDL Grants, *see* 15 U.S.C. § 9009(a)(2)(B) (defining "eligible entity" to include "any individual who operates under a sole proprietorship, *with or without employees*, or as an independent contractor" (emphasis added)); and that the SBA must distribute the Emergency EIDL within three days of the request, *see* 15 U.S.C. § 9009(e)(1). Regardless, this Court agrees with the district court's conclusion in *LIT Ventures* and determines,

at least at this stage of the litigation and on the record before it, that the CARES Act vests the Administrator with discretion.

For these reasons, the Court denies Mr. Brennan's request for a temporary restraining order and preliminary injunction.

### IV.     Request For Declaratory Relief

While most courts have rejected the reasoning of *Ulstein Maritime* and found that injunctive relief against the SBA is precluded by § 634(b)(1), most, but not all, courts have concluded that a plaintiff may assert claims for declaratory relief (and monetary damages) against the SBA. *Compare Mar*, 520 F.2d at 869 (concluding that § 634(b)(1) does not preclude an action for damages or one seeking a declaratory judgment), *with Murray*, 424 F. Supp. at 109 (dismissing claim for declaratory relief under § 634(b)(1)).   For example, in *Mar*, individual guarantors of a lease guaranteed by the SBA brought an action against the Administrator, claiming that the SBA had breached an agreement to release the individual guarantors if they found a tenant to take over on the defaulted lease.   The Tenth Circuit held that "[t]he likelihood is that the statute excepts the injunction because of the threat of impeding or interfering with the administrative process.   It does not, however, preclude an action for damages or one seeking a declaratory judgment."   *Mar*, 520 F.2d at 869.   The Tenth Circuit explained that, to the extent plaintiffs' complaint prayed that an order be issued directing defendant to execute a release freeing them from liability for personal endorsements, it should be construed as, in effect, an action seeking a mandatory injunction.   As such, it was barred by 15 U.S.C. § 634(b).   However, the Tenth Circuit indicated that it could grant declaratory relief.   In *Ulstein Maritime*, the First Circuit explained that "[a] declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action."   833 F.2d at 1054.

The Eighth Circuit does not appear to have addressed this issue, and this Court need not resolve this issue at this time to resolve Mr. Brennan's pending motion for temporary restraining order and preliminary injunction.  While Mr. Brennan's complaint seeks declaratory relief, his motion for a temporary restraining order and preliminary injunction does not contain such a request.

### V.      Writ of Mandamus

As an alternative to injunctive relief, Mr. Brennan suggests that this Court consider a writ of mandamus (Dkt. No. 2, at 3).   Mr. Brennan alleges that, because the Administrator failed to carry out a ministerial task, the Court has jurisdiction over his mandamus petition.  However, for the reasons explained in this Order, the Court determines, at least at this stage of the litigation and on the record before it, that the payment of an Emergency EIDL Grant to Mr. Brennan is not a ministerial duty, the performance of which this Court can compel by mandamus.

To analyze Mr. Brennan's request for a writ of mandamus, it is necessary to distinguish between the Court's power to adjudicate a request for mandamus relief and the Court's authority to grant relief.  "Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the [rule] on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States." *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386 (7th Cir. 2003) (citation omitted).

The Court determines that it lacks jurisdiction under the All Writs Act, 28 U.S.C. § 1651, which is not an independent grant of jurisdiction to a court; rather, it merely permits a court to issue writs in aid of its jurisdiction where subject matter jurisdiction already exists. *See* 28 U.S.C. § 1651(a).

The Court also considers the Mandamus Act, 28 U.S.C. § 1361, which vests district courts with original subject matter jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A district court may issue a writ of mandamus only if: (1) the plaintiff can establish a clear and indisputable right to the relief sought, (2) the defendant has a non-discretionary duty to honor that right, and (3) the plaintiff has no other adequate remedy. *See Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir. 2006) (citing *In re SDDS, Inc.*, 97 F.3d 1030, 1034 (8th Cir. 1996)).

It is generally accepted that "application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005). This legal precept dates back at least to *Minnesota v. Hitchcock*, in which the Supreme Court held that suits to compel federal officers:

> to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform . . . would not be deemed suits against the United States within the rule that the government cannot be sued except by its consent, nor within the rule established in the Ayers Case.

185 U.S. 373, 386 (1902); *see also Houston v. Ormes*, 252 U.S. 469, 473 (1920) ("Confined, as it necessarily must be, to cases where the officials of the government have only a ministerial duty to perform, and one in which the party complainant has a particular interest, the practice is a convenient one, well supported by both principle and precedent.").

The Eighth Circuit has explained that, "[i]n resolving whether mandamus jurisdiction is available, the 'allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction.'" *Belles v. Schweiker*, 720 F.2d 509, 513 (8th Cir. 1983) (quoting *Carpet, Linoleum & Resilient Tile Layers v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981)). In *Belles*, the plaintiff alleged that she was entitled to certain rights under

19

42 U.S.C. § 404(b) and that the Secretary of Health and Human Services had a clear duty to apply

the provisions of § 404(b) to her.  The Eighth Circuit, "[t]aking [plaintiff's] allegations at face

value, . . . conclude[d] that the trial court was correct in finding that it had jurisdiction under §

1361." *Id.* (footnote omitted).

While, at first blush, *Belles* might appear to support Mr. Brennan's jurisdictional

allegations, the Eighth Circuit subsequently explained that, in *Belles*:

> a decision in the plaintiff's favor there "would not entitle her to benefits, but would
> instead give her a right to notice and a prerecoupment hearing."  Accordingly, we
> held that jurisdictional limits of § 405 did not prohibit the exercise of mandamus
> jurisdiction where mandamus jurisdiction was otherwise appropriate.  The *Belles*
> court declined to consider whether the exercise of mandamus jurisdiction was
> appropriate in that case.

*Mitchael v. Colvin*, 809 F.3d 1050, 1055 (8th Cir. 2016) (citations omitted).  In *Mitchael*, former

dual status National Guard technicians sued the Commissioner of Social Security, seeking to

compel him to recalculate the amount of their benefits to allow them to take advantage of a rule

allowing dual status technicians to avoid application of the Windfall Elimination Provision.  This

Court dismissed the technicians' claims for lack of jurisdiction, and the technicians appealed.  The

Eighth Circuit held, as relevant here, that mandamus jurisdiction was not warranted because the

Social Security Administration did not have a clear, non-discretionary duty to reconsider the

plaintiffs' benefits.

Because defendants have mounted a factual attack on the Court's jurisdiction, Mr. Brennan

does not enjoy the benefit of the allegations in his pleading being accepted as true by this Court.

*See Branson Label*, 793 F.3d at 915.  This case is more similar to the facts in *Mitchael* than *Belles*.

A decision in Mr. Brennan's favor would entitle him to additional EIDL Advance funds, and the

Court determines at this stage of the litigation and on the record before it that the Administrator

does not have a clear, non-discretionary duty to fund an EIDL applicant's request for an emergency grant in any amount requested up to $10,000.00.

For these reasons, the Court determines that Mr. Brennan is not likely to succeed on his claim for a writ of mandamus.

### VI.     First Amendment Claim

To the extent Mr. Brennan alleges a First Amendment claim, the Court determines he is not likely to succeed on the claim.  It does not violate the First Amendment for the Administrator to allocate Emergency EIDL on the basis of a business' number of employees.

### VII.     Unreasonable Delay Claim

To the extent Mr. Brennan's allegations that the Administrator did not approve his request for Emergency EIDL within the statutorily prescribed three-day period, or issue regulations to carry out the amendments made by the CARES Act within the statutorily prescribed fifteen-day period, *see* 15 U.S.C. § 9012, could be construed as an "unreasonable-delay" claim under *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Court determines that Mr. Brennan is not likely to succeed on such a claim.  Any such claim based on these allegations likely is now moot because the Administrator has already acted on Mr. Brennan's EIDL Advance application and because Mr. Brennan is now aware of the employee-count rule.

### VIII.     Rule Making Claim

Mr. Brennan also claims that the SBA was required to publish its so-called employee-count rule in the *Federal Register* (Dkt. No. 3, ¶¶ 10–13).  Section 552 of Title 5 provides that "a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."  The Supreme Court has explained that § 10 of the APA, 5 U.S.C. §§ 701–706, confers standing to obtain review of administrative actions

upon those parties who allege "that the challenged action ha[s] caused them [an] 'injury in fact,' . . . to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated." *Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) (footnote omitted) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).  "[T]he interest alleged to have been injured may reflect aesthetic, conservational, and recreational as well as economic values."  *Id.* at 738 (citation and internal quotation marks omitted).

Arguably, Mr. Brennan does not have standing to pursue a rule-making claim under § 552(a) because there is no casual connection between the alleged injury and the conduct of which he complains.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

However, even if Mr. Brennan has standing to seek judicial review under 5 U.S.C. § 552(a), Mr. Brennan's rule-making argument is misplaced because he was not "adversely affected" within the meaning of the APA by not learning of the internal memorandum before applying for an Emergency EIDL Grant.   Under the CARES Act, the Administrator was required to "issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 553(b) of title 5" "[n]ot later than 15 days after March 27, 2020," *i.e.*, April 11, 2020.  15 U.S.C. § 9012 (footnotes omitted).  According to Mr. Brennan's complaint, he applied for Emergency EIDL on March 31, 2020.  The employee-count rule is located in an internal memorandum from Kimberly S. Butler, Director, Office of Grants Management, to Tami Perriello, Chief Financial Officer, dated April 7, 2020 ("the Butler Memorandum") (Dkt. No. 9-1, at 5–6).  The parties do not appear to dispute that the Butler Memorandum was not made available to the public within the statutorily prescribed 15-day period.

The SBA was not required to have issued regulations by the time that Mr. Brennan applied for Emergency EIDL.  Further, and critically, it is apparent that Mr. Brennan "would have stood in no better stead if he had had notice of the internal memorandum before filing his request for [Emergency EIDL]." *Pesikoff v. Sec'y of Labor*, 501 F.2d 757, 763 n.12 (D.C. Cir. 1974).  Stated differently, Mr. Brennan cannot demonstrate that, had the Administrator published her employee-count rule in the *Federal Register*, rather than memorializing it in an internal memorandum, he would have received any more funds from the Administrator.  Because this Court determines that the Small Business Act, as amended by the CARES Act, confers discretionary authority on the Administrator to determine the amount of Emergency EIDL to award each applicant, up to $10,000.00, the Administrator still would not have exceeded the scope of the authority delegated to her in awarding Mr. Brennan only $1,000.00 in Emergency EIDL.

Even setting aside these issues, the Administrator was not required to publish the employee-count rule in the *Federal Register* because, despite Mr. Brennan's contentions to the contrary, it is not a "substantive" rule, that is, a rule that "bind[s]" the public, *Morton v. Ruiz*, 415 U.S. 199, 236 (1974), or, like a statute, has the "force and effect" of law," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979)).  *See also Bunge Corp. v. United States*, 5 Cl. Ct. 511, 523 (1984), *aff'd*, 765 F.2d 162 (Fed. Cir. 1985) ("When the matter in issue involves a policy that is entirely internal to the agency and that, of itself, does not affect the conduct of private parties, publication is not required by section 552(a)(1)(D)." (citing *Pesikoff*, 501 F.2d at 763 n. 12)).  Additionally, any belabored rule-making process would defeat the Congressional purpose of the EIDL Advance Program, that is, to assist

small business owners with immediate financial relief during the COVID-19 pandemic.  For these reasons, Mr. Brennan is unlikely to succeed on his rule-making claim.[2]

## IX.    Conclusion

For the foregoing reasons, having determined that Mr. Brennan is unlikely to succeed on the merits of his claims at this stage of the litigation and on the record before the Court, the Court denies Mr. Brennan's motion for temporary restraining order and preliminary injunction (Dkt. No. 2).  The Court holds under advisement Mr. Brennan's request for a permanent injunction and declaratory relief.

It is so ordered this 13th day of July, 2020.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge

---

[2]  Section 9012 of Title 15 provides that regulations issued by the Administrator to carry out the amendments made by the CARES Act need not comply with the notice requirements under 5 U.S.C. § 533(b), which requires an agency to publish notice of proposed rule-making in the *Federal Register*.    Accordingly, the Administrator may forego notice and comment in promulgating regulations to carry out the amendments made by the CARES Act.  However, whether the Administrator may forego publishing notice of proposed rule-making is not the question before the Court today; rather, the issue is whether the Administrator may forego publishing the final rule along with a statement of its basis and purpose in the *Federal Register* pursuant to 5 U.S.C. § 552.